**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 2011-cv-02030-RPM

DIANE DAVID,

    Plaintiff,

v.

SIRIUS COMPUTER SOLUTIONS,

    Defendant.

---

**PLAINTIFF'S MOTION TO DISQUALIFY
DEFENDANT SIRIUS COMPUTER SOLUTIONS' COUNSEL**

---

    Plaintiff, Diane David, by and through her counsel, Darold W. Killmer and Sara J. Rich of KILLMER, LANE & NEWMAN, LLP, pursuant to Colo. R. Prof. Cond. 1.7, 1.9, 1.10 and 1.18 and D.C.COLO.LCivR 83.4, hereby moves to Disqualify the law firm of DAVIS GRAHAM & STUBBS LLP as representatives of Defendant Sirius Computer Solutions, Inc. in this matter, and in support thereof states as follows:

<u>INTRODUCTION</u>

    Diane David hereby seeks to disqualify counsel for Defendant Sirius Computer Solutions, Inc., the attorneys of DAVIS GRAHAM & STUBBS LLP, from representing Defendant in this matter because Ms. David sought and received legal counsel and advice from Thomas P. Johnson, a partner at DAVIS GRAHAM & STUBBS LLP, regarding the exact employment matters which are the subject of this litigation. Counsel for Plaintiff does not file the instant Motion lightly and, in making the decision to seek this relief, has carefully considered the facts presented by this unusual set of circumstances.

It is clear, however, that the Colorado Rules of Professional Conduct and relevant caselaw, as well as the general interests of fairness and justice, preclude the attorneys of DAVIS GRAHAM & STUBBS LLP from representing Sirius in this action directly adverse to Ms. David's interests.

## FACTUAL BACKGROUND

Diane David has been employed by Sirius Computer Solutions, Inc. ("Sirius") since March 17, 2008, after she was actively recruited by Sirius's Colorado and Wyoming Area Sales Manager to leave her successful employment with Cornerstone Systems ("Cornerstone") and bring many of her most important account relationships with her to begin a career with Sirius as a Senior Account Executive. To Ms. David's dismay, the actual job opportunity with Sirius has utterly failed to provide what Sirius had represented to her prior to taking the position. Sirius's misrepresentations and concealment of material facts left Ms. David with a false impression of the anticipated employment terms and conditions to her significant detriment.

In November 2010, Ms. David notified Sirius that she had retained undersigned counsel to represent her with respect to issues arising out of her employment with Sirius. Soon thereafter, undersigned counsel was contacted by Donna K. McElroy of COX SMITH MATTHEWS, INC. in San Antonio, Texas who indicated that Sirius had retained her to represent the company with respect to Ms. David's claims against the company. Counsel for Plaintiff continued discussions on behalf of Ms. David with Ms. McElroy, on behalf of Sirius, through June 2011, when it became apparent that the parties were not going to be able to reach an agreement to resolve the matter prior to litigation. On June 14, 2011, Ms. David filed suit against Sirius in the District Court of Arapahoe County for

damages and equitable relief for negligent misrepresentation, fraudulent inducement of employment and promissory estoppel. On July 8, 2011, Ms. David effectuated service of process of the Complaint and Jury Demand on Defendant Sirius.

On or about July 27, 2011, Janet A. Savage of DAVIS GRAHAM & STUBBS LLP, notified undersigned counsel for the first time that she had recently been retained by Sirius to represent it with respect to the lawsuit just filed by Ms. David. Upon learning that a partner at DAVIS GRAHAM & STUBBS LLP had been hired by Defendant Sirius, Ms. David immediately became concerned. Ex. 1, *Diane David Affidavit*, ¶ 2. As undersigned counsel soon learned, Ms. David and her fiancé are close personal friends with Thomas P. Johnson, a partner at DAVIS GRAHAM & STUBBS LLP, and his wife, and over the course of the last four years have spent a significant amount of time together socially. Ex. 1, *Diane David Affidavit*, ¶ 3. The two couples play golf and tennis together; have had dinner together at restaurants and even at Ms. David's home; and have traveled together with tennis groups to places such as Houston, Texas and Scottsdale, Arizona. Ex. 1, *Diane David Affidavit*, ¶ 3. In addition to the close personal friendship enjoyed by the two couples, Ms. David has in fact sought and obtained legal advice from Mr. Johnson about the <u>exact</u> employment issue that is the subject of her lawsuit against Sirius. Ex. 1, *Diane David Affidavit*, ¶ 4.

Beginning in the fall of 2010, Ms. David decided that she needed to seek legal advice regarding her employment situation with Sirius and took the opportunity to speak with Mr. Johnson, whom she knew to be a well-respected attorney, during one of their social engagements. Ex. 1, *Diane David Affidavit*, ¶ 4. During her initial conversation with Mr. Johnson, Ms. David explained the situation that Ms. David was facing at Sirius,

3

and why she believed the company's actions in recruiting and hiring her were unfair and different from what had been represented to her when she agreed to work for Sirius. Ex. 1, *Diane David Affidavit*, ¶ 5.  Included in this conversation was Ms. David's recollection of the pre-hiring conversations she had with representatives of Sirius, including many of the representations to her that she had relied upon in accepting the position with Sirius.  Ex. 1, *Diane David Affidavit*, ¶ 5.

Ms. David sought Mr. Johnson's legal counsel and guidance regarding her employment situation with Sirius specifically because he is an attorney and an experienced litigator, and Ms. David considered him a trusted confidant.  Ex. 1, *Diane David Affidavit*, ¶ 6.  In addition to seeking his advice, Ms. David contacted Mr. Johnson in order to determine whether he could refer her to an employment attorney at his firm. Ex. 1, *Diane David Affidavit*, ¶ 6.  In response to her inquiries, Mr. Johnson indicated that Ms. David may indeed have valid legal claims, and that Ms. David should consider obtaining a good plaintiff's attorney to represent her.  Ex. 1, *Diane David Affidavit*, ¶ 6. During subsequent communications, Mr. Johnson provided Ms. David with the names of two attorneys who he advised her to contact.  Ex. 1, *Diane David Affidavit*, ¶ 7.  One of the attorneys he referred Ms. David to was undersigned counsel Ex. 1, *Diane David Affidavit*, ¶ 7.

Over the course of the next six to eight months -- after Ms. David retained KILLMER, LANE & NEWMAN, LLP to represent her -- Mr. Johnson periodically asked Ms. David how things were going with the legal case.  Ex. 1, *Diane David Affidavit*, ¶ 8. Ms. David responded with certain facts and circumstances of the case, including information regarding her litigation strategy and settlement position, and she also confided in him

4

regarding other matters directly related to the case.  Ex. 1, *Diane David Affidavit*, ¶ 8.  In effect, Ms. David was seeking a second opinion or reassurance as to the legal strategies being employed in her case and whether, in Mr. Johnson's professional judgment, things were proceeding appropriately. Ex. 1, *Diane David Affidavit*, ¶ 8.  For example, while settlement negotiations with Sirius were ongoing during the months leading up to filing the lawsuit, Ms. David sought Mr. Johnson's evaluation of Mr. Killmer's settlement position.  Ex. 1, *Diane David Affidavit*, ¶ 9.  Ms. David described in detail the recent settlement negotiations, including revealing settlement strategies to Mr. Johnson and obtaining input from Mr. Johnson on possible settlement strategies to employ.  Ex. 1, *Diane David Affidavit*, ¶ 9.  During the course of Ms. David's and Mr. Johnson's discussions regarding the settlement negotiations, Mr. Johnson offered insights on how Ms. David might utilize certain strategies with her attorney in future settlement negotiations.  Ex. 1, *Diane David Affidavit*, ¶ 9.  One such communication occurred just one week prior to Ms. David learning that Mr. Johnson's law firm had been hired by Sirius to represent it against Ms. David.

     Ms. David, as a very private and discrete person, did not regularly discuss these same issues in other social settings with other people.  Ex. 1, *Diane David Affidavit*, ¶ 10. It should have been apparent to any reasonable attorney, and it was certainly clear to Ms. David, that she was discussing these matters with Mr. Johnson precisely because he is an experienced litigation attorney.  Ex. 1, *Diane David Affidavit*, ¶ 10. Had Ms. David known that Mr. Johnson's law firm would line up directly adverse to her, she never would have been so candid and open with him about what were clearly confidential matters.

In an effort to resolve this matter without burdening the Court, counsel for Plaintiff contacted DAVIS GRAHAM & STUBBS LLP partner Janet Savage via telephone immediately after learning the foregoing from Ms. David, and informed Ms. Savage of the conflict posed by her and her firm's representation of Sirius in this matter. Ms. Savage responded to Plaintiff's concerns by asserting that Mr. Johnson and his wife were merely "friends" with Ms. David and that he had not "provided legal advice to Ms. David." Ex. 2, *Email from Savage to Killmer, dated August 2, 2011*. Counsel for Plaintiff immediately responded to counsel for Defendant by providing the legal basis supporting Plaintiff's request that Ms. Savage and DAVIS GRAHAM & STUBBS LLP voluntarily withdraw from its representation of Defendant Sirius. Ex. 3, *Letter from Killmer to Savage, dated August 3, 2011*. Finally, counsel for Defendant asserted in a letter dated August 9, 2011 that DAVIS GRAHAM & STUBBS LLP would not agree to withdraw from representation of Defendant Sirius, which resulted in the filing of the instant Motion. Ex. 4, *Letter from Savage to Killmer, dated August 9, 2011*.

## STANDARD OF REVIEW

Control of attorneys' conduct in litigation is within the supervisory power of the court, and is a matter of judicial discretion. *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994); *EEOC v. Orson H. Gygi Co.*, 749 F.2d 620, 621 (10th Cir. 1984). The Tenth Circuit has recognized that

> [m]otions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear. . . . Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law.

*Cole*, 43 F.3d at 1383. By Local Rule, the District of Colorado has adopted most of the Rules of Professional Conduct established by the Colorado Supreme Court. *See* D.C.COLO.LCivR 83.4. The party moving to disqualify opposing counsel bears the burden of persuasion. *World Youth Day v. Famous Artists Merchandising Exch.*, 866 F. Supp. 1297, 1299 (D. Colo. 1994).

## ARGUMENT

### I. Plaintiff Is Not Engaging In Improper Litigation Tactics

"Disqualification motions must be diligently pursued to avoid waiver and may not be used as strategic litigation tactics." *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir. 1985). Plaintiff is not seeking the disqualification of the lawyers of DAVIS GRAHAM & STUBBS LLP as a litigation tactic, but in order to remedy a conflict of interest and a clear appearance (and actuality) of impropriety. Moreover, Plaintiff's counsel immediately contacted counsel for Defendant upon learning of the conflict, attempted to confer about the issue and have promptly filed the instant Motion to disqualify. The case is in its very earliest stages, and a Scheduling Order has not yet been entered. Disqualification is an appropriate remedy given the attorney client-relationship and/or prospective client relationship which was formed between Ms. David and Mr. Johnson.

### II. The Attorney-Client Relationship Formed Between Ms. David and Mr. Johnson Requires The Disqualification Of DAVIS GRAHAM & STUBBS

"A party seeking to disqualify opposing counsel on the ground of a former representation must establish that: (1) an actual attorney-client relationship existed between the moving party and the opposing counsel; (2) the present litigation involves a matter that is 'substantially related' to the subject of the movant's prior representation;

7

and (3) the interests of the opposing counsel's present client are materially adverse to the movant." *Cole*, 43 F.3d at 1384 (citing ABA Model Rule 1.9(a) & (c)).[1] If the movant establishes that the first two prongs are satisfied, "an irrebuttable presumption arises that a client has indeed revealed facts to the attorney that require his disqualification." *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir. 1985). There can be no doubt that the underlying legal matter about which Ms. David was seeking Mr. Johnson's legal advice was substantially related to this litigation, *People v. Frisco*, 119 P.3d 1093, 1096 (Colo. 2005) (holding that matters involving the same transaction or legal dispute are "substantially related"), and that Sirius's interests are materially adverse to Ms. David's. The critical question here is whether an attorney-client relationship was formed between Ms. David and Mr. Johnson.

Colorado Rule of Professional Conduct 1.10 (a) ("Colo. R.P.C.") provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9." This rule is premised on the idea that "a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." Comment 2 to Colo. R.P.C. 1.10(a). As discussed below, Mr. Johnson is prohibited by Rule 1.9(a) from representing Sirius in a matter

---

[1] Colorado Rule of Professional Responsibility 1.9 sets forth duties to former clients, while Rules 1.7 and 1.8 apply to a lawyer's obligations pursuant to a current attorney-client relationship. Clearly, DAVIS GRAHAM & STUBBS LLP would be disqualified from representing Sirius in this matter under an analysis in which Ms. David was a "current client" of Mr. Johnson's. Rule of Professional Responsibility 1.7(a)(1) provides that a lawyer "shall not represent a client" if "the representation of one client will be directly adverse to another client." Colo. R. P. C. 1.7(a)(1). Under either a current or former client analysis, the considerations here mandate the disqualification of defense counsel in this matter.

directly adverse to Ms. David; therefore, all the lawyers of DAVIS GRAHAM & STUBBS LLP, including Janet A. Savage, are likewise prohibited from representing Sirius in this matter.

"Under Colorado law, [a]n attorney-client relationship is established when it is shown that the client seeks and receives the advice of the lawyer on the legal consequences of the client's past or contemplated actions. The relationship may be inferred from the conduct of the parties.  The proper test is a subjective one, and an important factor is whether the client believes that the relationship existed." *Johnson v. Riebesell*, 586 F.3d 782, 789 (10th Cir. 2009) (quoting *People v. Bennett*, 810 P.2d 661, 664 (Colo. 1991) (en banc) (per curiam)); *see also Artificial Nail Techs., Inc. v. Flowering Scents*, No. 06CV609DAK, LLC, 2006 U.S. Dist. LEXIS 54735 at * 2 (D. Utah 2006) ("An attorney-client relationship exists when the client reasonably believes the attorney represents the client's legal interests.") (internal quotation marks omitted).

Throughout the course of her conversations with Mr. Johnson, Ms. David certainly believed that she had formed an attorney-client relationship with Mr. Johnson, and that the communications were confidential and privileged and would not be information available to an opposing law firm.  Ex. 1, *Diane David Affidavit*, ¶ 10.  Given the facts and circumstances of the situation as outlined above, the meetings and discussions that Ms. David had with Mr. Johnson could have reasonably led her to believe that Mr. Johnson was representing her legal interests, and in fact Ms. David relied on his advice and counsel in making decisions with regard to this litigation.  This is especially so given that Ms. David remains employed by Defendant Sirius.  When Mr. Johnson determined that she may well have meritorious legal claims Ms. David

determined that she might be willing to take the considerably risky move of pursuing legal claims against her current employer. When Mr. Johnson further advised her that she should contact specific employment lawyers (including undersigned counsel) for further action on her case, she followed that advice. She eventually filed a lawsuit, against her <u>current</u> employer.

Given the appearance of impropriety on the part of DAVIS GRAHAM & STUBBS LLP in representing Sirius, the only appropriate remedy in this matter is disqualification. "The confidentiality of the attorney-client relationship is severely compromised, if not destroyed, when, after representing a client, a lawyer joins [with the party opposing] that client *with respect to the identical matter about which the attorney originally counseled the client.*" United States v. LaVallee, 439 F.3d 670, 683 (10th Cir. 2006) (quoting United States v. Schell, 775 F.2d 559, 565 (4th Cir. 1985)) (emphasis in original). Moreover, the creation of the attorney-client relationship, in conjunction with the fact that Mr. Johnson provided Ms. David with advice on the exact employment issue which is the subject matter of the instant litigation, provides an irrebuttable presumption that requires disqualification. Smith, 757 F.2d at 1100.

### III. The Prospective Client Relationship Formed Between Ms. David and Mr. Johnson Likewise Requires The Disqualification Of DAVIS GRAHAM & STUBBS

In addition to the Rules of Professional Conduct's prohibitions against adverse representation for current and former clients, Colo. R.P.C. 1.18 also provides protections for "prospective clients." The relevant portion of Colorado Rule of Professional Conduct 1.18, Duties to Prospective Clients, states as follows:

> (a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

>(b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
>
>(c) **A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to the prospective client**, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, **no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter**, except as provided in paragraph (d).

Colo. R.P.C. 1.18 (emphasis added). Even if no attorney-client relationship had been formed between Ms. David and Mr. Johnson, there can be no doubt that at least a "prospective client" relationship was formed during the time that she sought his advice and counsel about her employment case against Sirius. That prospective client relationship prohibits Mr. Johnson's firm's current representation of Sirius.

When Ms. David initially approached Mr. Johnson about her employment related legal issues with Defendant Sirius, knowing that Mr. Johnson worked at a large local law firm, she was not only seeking his legal advice, but was interested in whether he could refer her to an employment attorney at his firm. Ex. 1, *Diane David Affidavit*, ¶ 6. The continued conversations between Ms. David and Mr. Johnson should have made it clear to a reasonable attorney that Ms. David was seeking advice and representation, thus making her a "prospective client." In her mind, it was certainly possible that Mr. Johnson's firm could take her case directly against Sirius. The court's analysis of the facts in *Miness v. Ahuja*, 762 F. Supp. 2d 465, 479 (E.D.N.Y. 2010) is instructive here.

> Without doubt, [the client] was not a prototypical "prospective client" for [the attorney]. [The client] never met with [the attorney] in [the attorney]'s law office concerning this matter; the two never signed any kind of retainer agreement; and they never had a formal discussion concerning [the attorney]'s representation of [the client]. However, despite the lack of the usual formal "prospective client" aura, the Court finds that the totality of the parties' relationship demonstrates that [the client] was a prospective client of [the attorney].
>
> First, the Court finds that [the client] and [the attorney] had a close personal relationship for a long period of time, and that both men discussed significant business-related issues with the other. Second, the Court finds that, within the context of this ongoing relationship, [the client] and [the attorney] discussed in significant detail the events underlying this case as they took place. Third, the Court finds as a factual determination based on the evidence at the hearing, that during certain of these discussions, [the attorney] offered his legal services to [the client]. In addition, the Court also finds that, after [the attorney] had offered his legal services to [the client], [the attorney] continued to meet with [the client] socially, continued to discuss with him issues related to the present case, and repeated his offer of representation.

*Miness*, 762 F. Supp. 2d at 479-80.  Under the circumstances in that case, the court held that the client was a "prospective client" for purposes of Rule 1.18.[2]

Furthermore, the information which Ms. David provided to Mr. Johnson would be "significantly harmful" to her in this matter.  Through these protected disclosures, DAVIS GRAHAM & STUBBS LLP has gained insight into Ms. David's and her counsel's mental impressions and, critically, her and her counsel's settlement position and strategy.  The court in *Artificial Nail Techs* was persuaded to disqualify counsel precisely because of the disclosure of financial information which "could well have substantial impact on settlement proposals and on trial strategy." *Artificial Nail Techs., Inc. v. Flowering Scents, LLC*, 2006 U.S. Dist. LEXIS 54735, at * 7 (D. Utah 2006) (quoting *Margulies v.*

---

[2] The provision of the New York Code of Professional Conduct which the court applied in *Miness* is identical in all substantive respects to the Colorado Rule of Professional Conduct at issue here.

*Upchurch*, 696 P.2d 1195, 1202 (Utah 1985)).  Defense counsel in this case has also gained access to other crucial information, including Ms. David's thoughts and feelings with regard to her employment situation as the events occurred and her strategic thinking with regard to how she should manage the employment situation (which is ongoing), as well as her relationship with her own lawyer.  *See Miness*, 762 F. Supp. 2d at 480-81 (finding the disclosure of information of present thoughts and feelings, personal accounts of events shortly after they occurred, and strategic thinking harmful to the client).  Mr. Johnson has received extensive information regarding her job and critical issues related to whether and under what circumstances she might remain employed at Sirius or not.  Ex. 1, *Diane David Affidavit*, ¶ 8.  Based on the foregoing, Mr. Johnson and the lawyers of DAVIS GRAHAM & STUBBS LLP are prohibited from representing Sirius, whose interests are clearly adverse to Ms. David's, in the same legal matter.

### IV. Ms. David Will Be Significantly Prejudiced If Counsel Is Not Disqualified From Representation Of Defendant Sirius

If defense counsel is permitted to continue with the representation of Defendant Sirius, Ms. David will be significantly prejudiced in that she has provided crucial information to counsel for Defendant setting forth her position regarding settlement, in addition to information about the overall litigation strategy.  Defense counsel's access to Ms. David's confidential communications with her attorney, along with the mental impressions and legal strategies that such communications reveal, stands to pollute all aspect of this case and would significantly prejudice Ms. David's ability to fairly

prosecute her claims against Sirius.  On the other hand, Defendant Sirius would suffer minimal prejudice if its counsel were disqualified given the early stages of the litigation.[3]

## CERTIFICATION PURSUANT TO D.C.COLO. LCivR. 7.1

As set forth above, counsel for Plaintiff conferred with counsel for Defendant, Janet A. Savage, with respect to the issues raised herein, and counsel for Defendant is opposed to the relief requested.

### CONCLUSION

WHEREFORE, the Plaintiff respectfully requests that the Court GRANT Plaintiff's Motion to Disqualify Defendant Sirius Computer Solutions' Counsel.

DATED this 8th day of September 2011.

KILLMER, LANE & NEWMAN, LLP

s/ *Darold W. Killmer*
_____
Darold W. Killmer
Sara J. Rich
1543 Champa Street, Suite 400
Denver, Colorado 80202
Phone:  303.571.1000
Fax:  303.571.1001
dkillmer@kln-law.com
srich@kln-law.com

ATTORNEYS FOR PLAINTIFF

---

[3] Plaintiff would be amenable to a short stay of the present litigation to allow Defendant sufficient time obtain new representation.

## CERTIFICATE OF SERVICE

      I hereby certify that on September 8, 2011, I electronically filed the foregoing **PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT SIRIUS COMPUTER SOLUTIONS' COUNSEL** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Janet A. Savage    janet.savage@dgslaw.com
Sybil R. Kisken    sybil.kisken@dgslaw.com
DAVIS GRAHAM & STUBBS
1550 17th Street, Suite 500
Denver, CO  80202
Phone:  (303) 892-7497

ATTORNEYS FOR DEFENDANT

          *s/ Jesse Askeland*
          _____
          Jesse Askeland