IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Civil Action No. 11-cv-02030-RPM

DIANE DAVID,

    Plaintiff,

v.

SIRIUS COMPUTER SOLUTIONS, INC.,

    Defendant.

**ORDER ON PLAINTIFF'S POST-TRIAL MOTIONS**

Following a 7-day trial, a jury returned a verdict for Plaintiff Diane David on her claim of negligent misrepresentation against Defendant Sirius Computer Solutions ("Sirius"). [See Doc. 63, Ex. 1.] David sought economic damages as well as damages for noneconomic losses and injuries in connection with that claim. The jury awarded her $231,665 in economic damages and $0.00 in noneconomic damages. [See id.] The Court entered judgment accordingly. [See Doc. 65.]

David has filed a Motion to Amend Judgment to Include Statutory Prejudgment Interest [Doc. 67]; a Motion to Amend Judgment to Include Tax Penalty Offset [Doc. 68]; and a Motion to Review Costs [Doc. 71]. Sirius opposes the relief requested in each Motion.

**A. Motion to Amend Judgment to Include Statutory Prejudgment Interest [Doc. 67]**

David seeks to recover $139,713 in prejudgment interest on her damages award. [See Doc. 67 at 7.] A federal court sitting in diversity must apply state law to the issue of

1

prejudgment interest. Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1156 (10th Cir. 2000). David claims that prejudgment interest is mandatory in this matter pursuant to Colo. Rev. Stat. § 13-21-101, which provides:

> In all actions brought to recover damages for personal injuries sustained by any person resulting from or occasioned by the tort of any other person [or] corporation . . . . whether by negligence or by willful intent of such other person [or] corporation . . . and whether such injury has resulted fatally or otherwise, it is lawful for the plaintiff in the complaint to claim interest on the damages claimed from the date the action accrued. When such interest is so claimed, it is the duty of the court in entering judgment for the plaintiff in such action to add to the amount of damages assessed by the verdict of the jury . . . interest on such amount calculated at a rate of nine percent per annum . . . .

Colo. Rev. Stat. § 13-21-101(1). "An injury is personal when it impairs the well-being or the mental or physical health of the victim." Antolovich v. Brown Grp. Retail, Inc., 183 P.3d 582, 610-11 (Colo. App. 2007) (prejudgment interest available under Colo. Rev. Stat. § 13-21-101 because homeowner's damages derived from "loss of well-being and physical or mental health"); Schuessler v. Wolter, 310 P.3d 151, 168 (Colo. App. 2012) (Colo. Rev. Stat § 13-21-101 did not apply to plaintiff's economic damages, as "they did not result from an impairment of [plaintiff's] mental or physical health or well-being").

Here, David sought damages for economic losses or injuries as well as noneconomic losses or injuries related to Sirius' conduct. The Court instructed the jury as follows:

> In determining such damages, you shall consider the following:
>
> 1. any economic losses or injuries which Ms. Davis has had or will probably have in the future including:
>     The amount that Ms. David would have earned through her employment at Sirius Computer Solutions if Sirius had not fraudulently misrepresented information to Mr. David either fraudulently or negligently, relating to her employment with Sirius, loss of income and benefits, and loss of the ability to earn money in the future; and

    2. any noneconomic losses or injuries which Ms. David has had to the present time or which Ms. David will probably have in the future, related to Sirius's conduct including:
        physical and mental pain and suffering, inconvenience, emotional stress, and impairment of the quality of life.

[Doc. 72, Ex. A.] Based on that instruction, the jury awarded David $231,665 in damages for her economic losses or injuries, and $0.00 in damages for non-economic losses or injuries. Thus, David was compensated for the economic losses she suffered because of Sirius' misrepresentations, not for "intangible, subjective, noneconomic losses, including inconvenience and loss of peace of mind . . . ." Antolovich, 183 P.3d at 611. Indeed, the jury rejected David's theory of noneconomic losses completely. Because David's awarded damages derived from economic loss, not "from an impairment of [her] mental or physical health or well-being[,]" her injuries are not "personal" within the meaning of Colo. Rev. Stat. § 13-21-101. See Schuessler, 310 P.3d at 168. Therefore, she is not entitled to prejudgment interest under that statute. See id.

**B. Motion to Amend Judgment to Include Tax Penalty Offset [Doc. 68]**

As a result of the economic damages she was awarded, David states that she will likely be in a higher tax bracket for the tax year and will be required to pay additional federal and state taxes—what she characterizes as a "significant tax penalty." [Doc. 68 at 2.] She has therefore moved the Court, pursuant to Federal Rule of Civil Procedure 59(e), to amend the judgment against Sirius to include a tax penalty offset. [Id. at 1.]

A Rule 59(e) motion should be granted "only to correct manifest errors of law or to present newly discovered evidence." Loughridge v. Chiles Power Supply Co., 431 F.3d 1268, 1274-75 (10th Cir. 2005) (quoting Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997)). The Tenth Circuit has also approved of using a Rule 59(e) motion to contest

3

inconsistencies in a jury's verdict. See id. at 1275. David has not alleged that a damages award without a tax penalty offset will amount to a manifest error of law, that her request is based on newly-discovered evidence, or that there is an inconsistency in the jury's verdict. Accordingly, she is not entitled to relief under Rule 59(e).

While David's Motion is formally brought under Rule 59(e), her argument is in substance an appeal to the Court's equitable powers. Under the current tax code, successful claimants are prohibited from spreading tax liabilities created by a damages award into a year other than that in which the award was received. Both the Tenth Circuit and this Court have awarded successful employment discrimination claimants tax penalty offsets, reasoning that offsets are appropriate to protect them from being placed in a higher tax bracket in a single year due to a lump-sum damages payment. See Sears v. Atchison, Topeka & Santa Fe Ry., Co., 749 F.2d 1451, 1456 (10th Cir. 1984) (holding that district court did not abuse its discretion in awarding tax penalty offset); EEOC v. Beverage Distribs. Co., LLC, No. 11-cv-02557-CMA, 2013 U.S. Dist. LEXIS 172650, at *28-*30 (D. Colo. Dec. 9, 2013) ("A tax offset would simply restore [the plaintiff] to the position he would have been but for" defendant's wrongdoing); EEOC v. RadioShack Corp., No. 10-cv-02365-LTB, 2012 U.S. Dist. LEXIS 173846, at *5 (D. Colo. Dec. 6, 2012) ("As stated, I am to exercise my equitable powers to make [the plaintiff] whole. . . . I conclude that to do so, [the plaintiff] may need to receive a tax penalty offset award.") Based on those cases, David argues that she too is entitled to a tax penalty offset award because she incurred damages over multiple years, she will be unable to spread her lump-sum award over a multi-year period, and, consequently, she will likely be forced into a higher income tax bracket. [See Doc. 68 at 3-4.]

Although courts have "wide discretion in fashioning remedies to make victims of discrimination whole," Sears, 749 F.2d at 1456, David has not directed the Court to a case outside the discrimination context in which a court awarded a tax penalty offset as equitable relief. Any such award in a tort action before a jury would be for a jury to decide as an element of damages. To the extent the Court could award a tax penalty offset consistent with the Seventh Amendment, David has not persuaded the Court that such an award is warranted here.[1] It is not unjust to require a successful tort claimant to pay additional taxes on a lump-sum award; the Internal Revenue Code subjects such awards to taxation without an exception for circumstances like this. David's complaint regarding the tax consequences of her damages award is better directed at Congress.

**C. Plaintiff's Motion to Review Costs [Doc. 71]**

Plaintiff filed her Proposed Bill of Costs in the amount of $22,064.37. [Doc. 66.] The Clerk of the Court taxed David's costs in the amount of $10,093.50 and refused to award her the remaining $11,970.87 she claimed. David now seeks to recover: (1) the cost of her former Cornerstone boss Greg Peterson's airfare and the attendance fees incurred to present him as a witness at trial; and (2) the costs of two transcripts.

1. Greg Peterson

David seeks to recover the full cost of Greg Peterson's $819.60 round-trip airfare from Boston to Denver to testify at trial. 28 U.S.C. § 1821(c)(1) provides:

---

[1] The Court is skeptical that a tax penalty award that effectively adds to the monetary amount of a jury's damages award is actually equitable relief. See J.R. Simplot v. Chevron Pipeline Co., 563 F.3d 1102, 1115 (10th Cir. 2009) ("The general rule is that monetary relief is legal."). A court order increasing a jury's finding on damages to take into account a tax penalty would seem to violate the Seventh Amendment's command that courts not reexamine the findings of a jury, and would also appear to deny the defendant's right to have a jury determine damages. See Kelley v. City of Albuquerque, No. CIV 03-507JB, 2006 WL 1304954, at *5-*6 (D. N.M. Mar. 31, 2006), for a well-reasoned discussion of this issue.

> A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.

David has provided a receipt of Peterson' travel confirming the $819.60 figure [see Doc. 66 at 29], and she maintains that Peterson got the most economical rate reasonably available [see Doc. 77 at 2]. Therefore, David contends that she is entitled to the full cost of Peterson's airfare.

David also seeks $80 in witness fees for the days Peterson spent traveling to and from the trial. Under 28 U.S.C. § 1821(b), a witness may be paid a $40 attendance fee for "each day's attendance" and "the time necessarily occupied in going to and returning from the place of attendance." The Clerk taxed only $40 for December 4, the day Peterson testified. Peterson traveled to Denver on December 3, and traveled back to his home in Boston on December 5. David claims she is entitled to $80 in attendance fees for the travel days that book-ended Peterson's testimony.

Sirius objects to David's request for costs for Peterson's travel and attendance fees on two grounds. First, it claims that costs are not allowable because Peterson "was Plaintiff's own witness, not under subpoena or otherwise compelled to testify." [See Doc. 74 at 3.] The nature of a witness' attendance at trial – either voluntary or compelled – does not bear upon the availability of costs under the plain language of 28 U.S.C. § 1821, and Sirius does not cite a single authority in support of its position. Second, Sirius argues that "the necessity of [Peterson's] testimony is questionable." [Id.] Sirius does not explain why it believes that to be the case. David, on the other hand, explains why Peterson was important: he testified

6

that David would have stayed on at Cornerstone after it merged with Mainline and that she would have continued servicing her Cornerstone accounts had she stayed there, which supported David's economic loss theory; and he testified to her good character, which Sirius had called into question. [See Doc. 77 at 3.] David also states that she requested that Peterson be permitted to testify telephonically, which Sirius opposed and the Court denied. As such, she was required to incur travel expenses to allow him to testify in person. [See id.]

The Court concludes that Plaintiff is entitled to the full cost of Peterson's airfare, $819.60, under 28 U.S.C. § 1821(c)(1). She is also entitled to $80 for the two days Peterson spent traveling to and from Denver under 28 U.S.C. § 1821(b).

2. Transcript costs

David also seeks $184.40 in costs for the transcript of her economic expert Dr. Bill Kaempfer's deposition, and $56.40 in costs for the transcript of the hearing on Defendant's Motion for Summary Judgment, for a total of $241.20.

28 U.S.C. § 1920(2) permits a court to "tax as costs" "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Whether a transcript was "necessarily obtained" is a fact-based inquiry committed to the court's discretion. Crandall v. City & County of Denver, 594 F. Supp. 2d 1245, 1247 (D. Colo. 2009) (citation omitted). "[T]ranscriptions that are obtained solely for discovery purposes or for the 'convenience of counsel' are generally not taxable." Id. at 1248 (quoting James v. Coors Brewing Co., 73 F. Supp. 2d 1250, 1261 (D.Colo.1999)).

While it was certainly convenient for David's counsel to have both transcripts to engage in additional discovery or prepare for trial, David's description of how counsel used or intended to use the transcripts at the time they were ordered falls short of establishing that the

transcripts were "necessarily obtained for use in the case." Exercising its discretion, the Court will deny Plaintiff's request.

**D. Conclusion**

Upon the foregoing, it is

ORDERED that Plaintiff's Motion to Amend Judgment to Include Statutory Prejudgment Interest [Doc. 67] is denied, and it is

FURTHER ORDERED that Plaintiff's Motion to Amend Judgment to Include Tax Penalty Offset [Doc. 68] is denied, and it is

FURTHER ORDERED that Plaintiff's Motion to Review Costs is granted in part and denied in part. The Clerk shall tax costs in the amount of $899.60 to reflect the costs of Greg Peterson's airfare and attendance fees for the two days Peterson spent traveling to and from Denver to testify at trial.

Dated: March 7, 2014.

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch
Senior District Judge